[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**June 9, 2005**
**THOMAS K. KAHN**
**CLERK**

Nos. 04-14923 & 04-14924
Non-Argument Calendar

_____

Tax Court Nos. 5259-99 & 15992-99

JOHN WELLER WOOD, JR.,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeals from Decisions of the
United States Tax Court

_____

**(June 9, 2005)**

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner John Weller Wood, Jr. <u>pro se</u> appeals the United States Tax

Court's dismissal of his petitions challenging the determinations by the

Commissioner of the Internal Revenue Service ("Commissioner") that he was liable for income tax deficiencies and penalties for the 1994, 1995, and 1996 tax years. These deficiencies and penalties were based on the Tax Court's findings that Wood was not in the real estate business, that the real estate he sold was not business related, and therefore, that he was not permitted to take business deductions relating to the homes in issue.

On appeal, Wood argues that the Tax Court erred in determining that he was not a real estate dealer and in finding that the Commissioner did not violate the automatic stay in his Chapter 11 bankruptcy by assessing a deficiency and taking post-petition collection actions. After review, we affirm.

## I. BACKGROUND

### A. Real Estate Purchases

Between 1974 and 1995, Wood, along with his wife, purchased three homes, consecutively, which served as their personal residences. In 1974, the Woods purchased a home in Annandale, Virginia. After Wood retired from the military in 1977, the Woods sold the Virginia home and purchased a home in Warren, New Jersey.

The New Jersey home served as the Woods' personal residence until 1990. In 1988, the Woods purchased a piece of land in Boca Raton, Florida and in 1989,

hired a builder to construct a home on the property. In 1990, the Woods moved into the Florida home and listed the New Jersey residence for sale with a real estate agent. The agent rented the New Jersey residence from 1992 until 1994, when it was sold. The Woods remained in the Florida home until the mortgage was foreclosed in January 1996.

In addition to the homes that they purchased as personal residences, the Woods purchased a parcel of land, a home, and two timeshares. In 1976, the Woods purchased an undeveloped parcel of land in Florida, which remained undeveloped throughout the relevant tax years.[1] In 1986, the Woods purchased a house in Hilton Head Island, South Carolina, which they later sold in 1989 to help finance the construction of the home in Boca Raton, Florida. The Woods also purchased a one-week timeshare unit in Brookdale, Pennsylvania in 1977 and a one-week timeshare unit in Gulfstream, Florida in 1987. The Woods continued to own the undeveloped land in Florida and the two timeshares through 1996.

## B. Wood's Business Interests

Wood graduated from West Point in 1960 and served in the military until 1977. In 1967, Wood, along with several other officers, became a shareholder of Miracle Strip Parkway Realty, Inc. ("MSPR"), a corporation organized for the

---

[1]Wood entered into a contract to sell the undeveloped land, but the buyer failed to perform under the contract.

purpose of buying land to be divided into lots. MSPR was later converted to a limited partnership, and Wood was a limited partner during the relevant tax years. Over the years, MSPR purchased and sold undeveloped land to individuals, real estate companies, and developers.

After the Woods moved to New Jersey, Wood was employed first by Lockheed Electronics and then by ITT Avionics. In 1981, he started a consulting business. He also started J&M Enterprises, a home improvement business. In addition, from 1972 through 1996, Wood spent approximately one week each year maintaining and managing an apartment in Shrewsbury, New Jersey, which was owned by his mother.

In 1982, Wood filed a certificate with the State of New Jersey in which he certified that he was conducting a business under the name Logistics Technology Group ("LTG"). The certification described LTG's business as defense electronics, consulting services, real estate dealer activities, and home improvement services. Wood also opened a bank account in LTG's name. From the LTG account, in 1989 and 1990, he generally paid (1) the installments on the mortgage for the New Jersey home and (2) taxes and fees associated with the undeveloped Florida land and the two timeshares.

## C. The Bankruptcy Proceeding

On April 29, 1994, the Woods filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Florida. The Commissioner filed with the bankruptcy court a proof of claim, claiming an unsecured nonpriority claim of $2,200 and an unsecured priority claim of $20,389.54. On January 18, 1995, the Woods filed a Chapter 11 plan of reorganization. On February 6, 1995, the bankruptcy court confirmed the plan of reorganization, indicating that the Woods were discharged "from any debt that arose before the date of confirmation of the Plan, except any debts exempted from discharge under § 523 of the Bankruptcy Code. . . ." On May 18, 1995, the bankruptcy court issued its final decree and closed the case.

**D. The Tax Proceeding**

In December 1997, the Commissioner began an examination of the Woods' 1994, 1995, and 1996 tax returns. On December 21, 1998, the Commissioner issued a notice of deficiency to the Woods for 1994. On July 19, 1999, the Commissioner issued a notice of deficiency for 1995 and 1996. In the notices of deficiency, the Commissioner determined that the Woods were not in the real estate business from 1994 through 1996 and therefore disallowed expenses and losses that the Woods had claimed on Schedule C (Profit or Loss From Business) for those years. The disallowed net losses were $121,966 for 1994, $72,546 for

1995, and $345,223 for 1996.[2]

Wood filed a petition in the Tax Court in which he argued that the Commissioner's determinations were foreclosed by the filing of the Chapter 11 petition in 1994 because the Commissioner's issuance of the notices of deficiency violated the automatic stay, see 11 U.S.C. § 362(a), and because the claims had been discharged in the bankruptcy. In addition, Wood argued that he had been in the business of selling real estate and therefore the real estate expenses that he claimed on Schedule C were properly deductible.

At trial, Wood testified that he had obtained a New Jersey real estate license in 1973.[3] He further testified that he had set up MSPR in Florida to buy large acreage and divide it into lots, that he was a limited partner in MSPR during the tax years at issue, and as such, that he attended a meeting once each year to vote on whether to sell or subdivide a property.[4] Wood also testified that he had intended to rent the property in South Carolina rather than live there and that he had formed

---

[2]In the notices of deficiency, the Commissioner made several additional determinations, all of which were either conceded by the taxpayers before trial or sustained by the Tax Court and not challenged by Wood in his opening brief and are therefore abandoned. See Maiz v. Virani, 253 F.3d 641, 674 (11th Cir. 2001) (arguments not raised in the opening brief may not be considered).

[3]An exhibit, however, indicated that Wood's license was returned to the State of New Jersey in 1988.

[4]A copy of the partnership agreement provides that "[n]o partner shall take part in the management of the business, [or] transact any business for the partnership. . ."

a partnership with his brother and mother-in-law, who contributed $105,000 and $100,000 respectively toward the Boca Raton home. Wood also testified that the attempted sale of the undeveloped property in Florida in 1994 was initiated by the potential buyer.

The Tax Court determined that the notices of deficiency were not foreclosed by the Chapter 11 filing because a Chapter 11 filing does not operate as a stay of either an audit to determine tax liability or a notice of tax deficiency, 11 U.S.C. § 362(b)(9)(A) and (B), and in any event, the Tax Court proceeding against Wood was not brought until long after the stay was lifted, which was May 18, 1995, at the latest. See 11 U.S.C. § 362(c)(2). The Tax Court determined that it lacked subject matter jurisdiction to determine whether the Commissioner's claims were discharged in the bankruptcy proceeding because the jurisdiction of the Tax Court in a deficiency proceeding is generally limited to a redetermination of the correct amount of a deficiency and is unrelated to the collection of the tax. Swanson v. Commissioner, 65 T.C. 1180, 1184 (1976) (action for redetermination of a deficiency "has nothing to do with collection of the tax nor any similarity to an action for collection of a debt").

Turning to the merits, the Tax Court found that Wood did not purchase and hold the homes in Annandale, Virginia, Warren, New Jersey, or Boca Raton,

7

Florida for sale to customers but rather purchased them as personal residences. Likewise, the court found that Wood did not purchase the timeshares in Brookdale, Pennsylvania and Gulfstream, Florida and the residence in Hilton Head, South Carolina for sale to customers because they were personal vacation properties. Noting that there was no evidence that Wood, over an eighteen-year period (1976 - 1994), ever attempted to sell or develop the undeveloped land in Florida, the Tax Court determined that Wood purchased the land as a personal investment and not as property held for sale in the ordinary course of business. Finally, the Tax Court determined that Wood's investment in MSPR did not establish that he was a dealer in real estate because a partnership is an independently recognizable entity apart from its partners, and moreover, as a limited partner, Wood did not actively participate in the conduct of the partnership business. The Tax Court, observing that the frequency of sales in the real estate context is "highly probative" as to whether properties were held for personal or investment reasons rather than for sale, Major Realty Corp. & Subs. v. Commissioner, 749 F.2d 1483, 1488 (11th Cir. 1985), noted that the Woods had sold only four properties during a twenty-year period. Accordingly, the Tax Court found that the Woods were not real estate dealers, and therefore the losses and expenses incurred could not be deducted as business expenses.

## II. DISCUSSION

"We review <u>de novo</u> the tax court's conclusions of law and review findings of fact for clear error." <u>Davis v. Commissioner</u>, 210 F.3d 1346, 1347 (11th Cir. 2000).

### A. Automatic Stay

The filing of a bankruptcy petition triggers an automatic stay from "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." 11 U.S.C. § 362(a)(8). The stay remains in effect until the earliest of the closing of the case, dismissal of the case, or the grant or denial of a discharge. 11 U.S.C. § 362(c)(2). A bankruptcy filing does not, however, stay "an audit by a governmental unit to determine tax liability" or "the issuance to the debtor by a governmental unit of a notice of tax deficiency." 11 U.S.C. § 362(b)(9)(A) and (B).

Wood filed the Chapter 11 bankruptcy petition on April 29, 1994. On February 6, 1995, the bankruptcy court confirmed the plan of reorganization and discharged the Woods from any debt that arose before the date of confirmation. The bankruptcy court issued its final decree and closed the case on May 18, 1995. The first notice of deficiency was not issued until December 21, 1998, more than three years after the automatic stay had ended. Moreover, audits and notices of

9

deficiency are expressly exempted from the automatic stay.  11 U.S.C. §

362(b)(9)(A) and (B). The Tax Court did not err in concluding that the notices of

deficiency did not violate the automatic stay.[5]

## B.  Business Expenses Deduction

A taxpayer generally may deduct expenses that are ordinary and necessary in

carrying on a trade or business, 26 U.S.C. § 162(a), but may not deduct personal,

living, or family expenses.  26 U.S.C. § 262(a).  To be deductible, an item must:

(1) "be paid or incurred during the taxable year"; (2) "be for carrying on any trade

or business"; (3) "be an expense" (rather than a capital expenditure); (4) "be a

necessary expense"; and (5) "be an ordinary expense." Commissioner v. Lincoln

Sav. & Loan Ass'n, 403 U.S. 345, 352, 91 S. Ct. 1893, 1898 (1971) (internal

quotation marks and citation omitted).  For a taxpayer to be carrying on a trade or

business, the "taxpayer must be involved in the activity with continuity and

regularity and . . . the taxpayer's primary purpose for engaging in the activity must

be for income or profit. . . ." Commissioner v. Groetzinger, 480 U.S. 23, 35, 107

S.Ct. 980, 987 (1987).  "The frequency and substantiality of sales are highly

---

[5]Many of Wood's contentions respecting the automatic stay relate to a separate notice of deficiency pertaining to the 1992 tax year, which was addressed in a separate proceeding before the Tax Court that was unappealable under the procedures prescribed by 26 U.S.C. § 7463 and was, in any event, outside the jurisdiction of the Tax Court in this proceeding.  26 U.S.C. § 6213(a); Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 421-22, 64 S. Ct. 184, 186 (1943).  Accordingly, we do not address Wood's claims relating to the previous Tax Court proceeding.

probative on the issue of holding purpose because the presence of frequent sales ordinarily belies the contention that property is being held 'for investment' rather than 'for sale.'" Suburban Realty Co. v. United States, 615 F.2d 171, 178 (5th Cir. 1980).[6]

A person who is engaged in the business of selling real estate to customers may be characterized as a real estate dealer; however, an individual who holds real estate for investment or speculation and receives rentals therefrom is not a real estate dealer. 26 C.F.R. § 1.1402(a)-4(a). Whether a property is held for sale to customers in the ordinary course of a taxpayer's business is a question of fact, and must be considered on a case-by-case basis. See Major Realty Corp. and Subs. v. Commissioner, 749 F.2d 1483, 1487-88 (11th Cir. 1985). "The 'holding purpose' inquiry may appropriately be conducted by attempting to trace the taxpayer's primary holding purpose over the entire course of his ownership of the property. . . . Thus, the inquiry should start at the time the property is acquired." Suburban Realty, 615 F.2d at 183-84 (internal citations omitted).

The Tax Court did not clearly err in determining that the Woods' homes in Annandale, Virginia, Warren, New Jersey, and Boca Raton, Florida were not held

---

[6]Fifth Circuit decisions issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

for sale in the ordinary course of carrying on a real estate business because they were the Woods' personal residences for substantial periods of time. Nor did the Tax Court clearly err in its finding that the timeshares, the residence in Hilton Head, South Carolina, and the undeveloped parcel in Florida had no business purpose. Wood produced no evidence that he made strenuous attempts to sell the Florida parcel or the timeshares. In fact, he held the Florida parcel for eighteen years, during which time only one expression of interest in a sale was made, initiated by a potential purchaser in 1994. Clearly, four sales over a twenty-year period do not constitute "frequent and substantial" sales. See generally id. at 178. Finally, Wood's interest in MSPR and the financial assistance that family members provided to finance the home in Boca Raton, Florida do not establish that he was in the real estate business. See Brannen v. Commissioner, 722 F.2d 695, 703 (11th Cir. 1984) ("[T]he business of a partnership is a separate business from that of the partners. . . ."). Accordingly, the Tax Court did not err in finding that Wood was not in the real estate business.

## III. CONCLUSION

For all of the above reasons, this Court affirms the Tax Court decision in favor of the Commissioner.

**AFFIRMED.**

12